People v Murray (2020 NY Slip Op 08007)





People v Murray


2020 NY Slip Op 08007


Decided on December 29, 2020


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: December 29, 2020

Before: Friedman, J.P., Renwick, Singh, Kennedy, Shulman, JJ. 


Ind No. 3525/16 3525/16 Appeal No. 12695 Case No. 2019-4533 

[*1]The People of the State of New York, Respondent,
v
Hasahn D. Murray, Defendant-Appellant.


Robert S. Dean, Center for Appellate Litigation, New York (Abigail Everett of counsel), for appellant.
Cyrus R. Vance, Jr., District Attorney, New York (Alexander Michaels of counsel), for respondent.



Judgment, Supreme Court, New York County (Ruth Pickholz, J.), rendered April 12, 2018, convicting defendant, after a jury trial, of robbery in the second degree (two counts) and assault in the second degree, and sentencing him, as a second violent felony offender, to an aggregate term of 12 years, affirmed.
At the conclusion of a jury trial for multiple defendants, the trial court excused the alternates and broke for lunch at about 1:00 p.m. At 2:15 p.m., the court proceedings resumed, and defense counsel stated he had been informed that a juror had improperly discussed the trial at a social event the prior weekend. As a result, defense counsel moved for a mistrial. After some back and forth with the prosecutor and defense counsels, at 2:30 p.m., the court contacted the alternates to find out if they were "available for service." They answered in the affirmative. The court then dismissed the jury for the day and had them return with the alternates the following morning. That's when the court selected one of the alternates to replace the juror who had committed misconduct, charged the jury with the alternate, and the jury began to deliberate. Thereafter, the jury found defendant guilty of robbery and assault in the second degree. Defendant appeals.
First, defendant claims, and the dissent agrees, that the court's decision to replace a juror with an alternate requires reversal because the alternate had been excused for more than a "de minimis" period of time, having left the courthouse and gone home. While this argument is preserved, it is unavailing.
The plain language of CPL 270.35 (1) states, in relevant part, that 
"If at any time after the trial jury has been sworn and before the rendition of its verdict, a juror is unable to continue serving . . . the court must discharge such juror. If an alternate juror or jurors are available for service, the court must order that the discharged juror be replaced by the alternate juror whose name was first drawn and called, provided, however, that if the trial jury has begun its deliberations, the defendant must consent to such replacement."
Thus, according to the plain language of CPL 270.35 (1), the trial court was required to decide if the alternate was "available for service," and did not require the consent of defendant given that the jury had not begun its deliberations.
The dissent's reliance on People v Gomez (308 AD2d 460, 461 [2d Dept 2003], lv denied 1 NY3d 572 [2003]), is misplaced. Specifically, the dissent dismisses the critical fact that the jury in Gomez had already begun deliberations when the court attempted substitution (id.). Thus, according to the plain language of CPL 270.35(1), the trial court had to receive the defendant's consent to replace a juror during deliberations. In the case at bar, the jury had not been charged, let alone begun deliberating. Therefore, Gomez is inapposite. 
Further, People v Brown (70 AD3d 407, 408 [1st Dept 2010], lv denied 14 NY3d 839 [2010]) does not limit CPL 270.35(1). In Brown an alternate juror was discharged. While he was still in the courthouse, the trial court asked him to return. We upheld the conviction and found the jury to be fair and within the directives of CPL 270.35(1) since "the interval between the discharge of the alternate, who was still in court, and his reinstatement was de minimis" (id.). However, we did not define or qualify "de minimus," and we further stated this as dicta. Comparing Brown to the facts of the case at bar, it is clear that the alternate's reinstatement in the present case was "de minimus."
Nor are we persuaded by the dissent's reliance on Brown. The dissent ignores that its conclusion depends on the portion of the opinion that is dicta. The de minimis temporal requirement referenced in Brown finds no support in the text of the statute. To the contrary, imposing a temporal requirement would be inconsistent with the mandatory language of CPL 270.35(1), which states that "[i]f an alternate juror or jurors are available for service, the court must order that the discharged juror be replaced by the alternate juror."
We do not agree with the dissent that our holding grants the trial court unfettered authority to reinstate alternate jurors after discharge. Rather, the Court of Appeals has explained that the statute "invests a trial court with latitude to make a balanced determination affecting the administration of justice based on the facts required to be adduced, recognizing that criminal proceedings should not be unnecessarily or unfairly delayed against the interests of either the defense or the prosecution, especially when the trial is under way and so many other participants are involved" (People v Page, 72 NY2d 69, 73 [1988]). In keeping with that pragmatic approach, this Court has instructed trial judges to bear in mind the ultimate objective of ensuring the impartiality of the fact finder, while balancing whether the "removal of the [alternate] juror would [ ] necessitate[ ] the drastic remedy of a mistrial" (People v Jimenez, 101 AD3d 513, 514 [1st Dept 2012], lv denied 20 NY3d 1100 [2013]). That is precisely what occurred here. The trial court twice questioned the alternates and ascertained that they could fairly deliberate before substitution. We review such a determination for abuse of discretion and find none here.
Second, defendant's argument that the alternate should have been readministered the "oath of truthfulness" before he answered the court's questions about whether he could continue to serve fairly is unavailing. An alternate had already been administered the oath and is likely aware of a continuing obligation to be truthful to the court, despite having been discharged. Also, nothing casts doubt on the veracity of his statements that he had not discussed the case or done anything that compromises his impartiality. Defendant's contention that "the alternate jurors may well have been reluctant to acknowledge that they were no longer suitable for service" is speculative.
Third, defendant challenges the convictions of second-degree assault and second-degree robbery on the ground that the jury's finding that the victim sustained a "physical injury" was unsupported by legally sufficient evidence and against the weight of the evidence. Alternatively, defendant argues that his two second-degree robbery convictions should be replaced with the lesser charge of petit larceny (and the sentence be reduced to a year) because the People have not sufficiently proved that he used force "for the purpose of" taking the victim's phone. Defendant also urges the court to modify the second-degree assault conviction to third-degree assault, claiming the verdict is inconsistent. These arguments are without merit and must be rejected.
A verdict is legally sufficient where "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (People v Contes, 60 NY2d 620, 621 [1983] [internal quotation marks omitted]; see People v Danielson, 9 NY3d 342, 349 [2007]). The factfinder's credibility determinations are entitled to great deference (see People v Bleakley, 69 NY2d 490, 495 [1987]; see also Danielson, 9 NY3d at 349).
Here, the record establishes that the victim sustained "substantial pain" as a result of the assault. The victim testified that, after the incident, he had headaches that lasted a couple of days, and pain in his ribs that lasted 1½ weeks. Further, the People submitted officer testimony regarding the victim's bruising, swelling, and lacerations on the victim's face, bruising on his right arm and rib, and him limping, X-rays which confirmed swelling in the hand, and photographs that were taken July 29, 2016 showing that the bruises were still visible seven days after the incident.
Additionally, it could be inferred from the circumstances that defendant's intent at the time of the assault was, at least in part, to compel the victim to give up his phone or to prevent any resistance to the taking (see People v Cruzado, 136 AD3d 572, 572 [1st Dept 2016], lv denied 27 NY3d 1067 [2016]; People v Authers, 134 AD3d 526, 527 [1st Dept 2015], lv denied 27 NY3d 991 [2016]; People v McBroom, 134 AD3d 476, 476 [1st Dept 2015], lv denied 26 NY3d 1147 [2016]), and, the act of searching his pockets after the assault carried an implied threat of force (see Matter of Mark W., 22 AD3d 257, 257 [1st Dept 2005] [act of searching victim's person "carried an implied threat of force under the circumstances"]). That the jury acquitted defendant of first-degree robbery does not imply that they found that he did not use a "dangerous instrument," and concluding such would improperly require this Court "to intrude into the jury's deliberative processes by speculating on how the jury perceived and weighed the evidence" (see People v Rayam, 94 NY2d 557, 561 [2000] [internal quotation marks omitted]; see People v James, 170 AD3d 477, 478 [1st Dept 2019], lv denied 33 NY3d 1070 [2019]).
Fourth, while defendant's argument that certain testimony permitted the jury to prejudicially infer criminal propensity is preserved, it too is unavailing. The testimony does not implicate Molineax, as nothing about it suggests that defendants engaged in prior misconduct. Even if it does, it is probative of the issue of whether they were acting in concert.
Last, defendant's excessive sentence claim is without merit. There is no basis to reduce the sentence. Defendant, while acting in concert with others, violently beat a man, and forcibly took his phone. Additionally, defendant has a lengthy criminal record, including a conviction of attempted second-degree criminal possession of a weapon (loaded gun) in 2013, and a conviction of second-degree robbery in 2014, and he committed the present crimes less than two months after being released from prison on the 2014 robbery conviction.
All concur except Renwick, J.
who dissents in a memorandum
as follows:




RENWICK, J. (dissenting)
 

I respectfully dissent. I agree with the majority that the evidence adduced at trial was legally sufficient, and the conviction was not against the weight of the evidence. Thus, defendant's conviction should not be dismissed. In my view, however, Supreme Court had neither the statutory authority nor the inherent power to recall alternate jurors who had been discharged and returned to their private life. Instead, the court should have granted defendant's motion for a mistrial after determining that a sworn juror had engaged in substantial misconduct. Accordingly, the court erred in seating an alternate juror who had been discharged and gone home.[FN1] Today, this Court takes the unprecedented step of granting trial courts the unfettered authority to reinstate alternate jurors after their discharge and return to their personal life. Factual and Procedural Background
Defendant Murray and codefendants Brown and Sanford were indicted for numerous crimes stemming from an assault and robbery of the complaining witness. Defendant allegedly took a cellular phone from the victim during the assault. The matter proceeded to trial on February 26, 2018. Summations were completed before lunch on March 5, 2018. At 1:00 p.m., before sending the regular jurors to lunch, the court dismissed the two alternate jurors. The court told them: "[W]e have our jury here and they are going to start their deliberations this afternoon but I can't let you go without thanking you and telling you [,] you are excused from this case and from jury duty for about six years, that is the good news. You are excused now."
Over the lunch break, however, counsel for Brown got a call from an investigator from her office to report that one of the jurors, juror number two, had approached him at a social gathering over the prior weekend and had been discussing the case. The juror mentioned that "all of the defendants had been busted on video" and the only issue for the jury was "the degree of the charge." This juror happened to be the girlfriend of the investigator's "close [male] friend."
Counsel for defendant argued that the juror had formed an opinion prematurely. When questioned by the court, the juror admitted talking to the investigator, but she denied having formed any opinion. Counsel for defendant moved for a mistrial. He argued that the juror had "made a determination of the defendants' guilt" and there were no available alternates. The prosecutor argued that the sworn juror, though she had violated her oath, was still "fair and impartial." Alternately, the prosecutor suggested phoning the alternates to confirm that they had not discussed the case. The court's initial inclination was to grant the mistrial because the sworn juror had violated her oath and the court did not think that she could bring back a discharged alternate.
At about 2:30 p.m., the court clerk reached alternate number two and put her on speaker phone. In response to the judge's [*2]questions, alternate two said that she had not discussed the case or formed an opinion. The court told the woman that one of the sworn jurors had violated her oath by discussing the case and the judge asked if the alternate had "done that." The alternate said no. The judge asked her not to discuss the case and to come back to court the following morning. After the call ended, the judge indicated that she thought the woman had been honest and that the situation could be "salvage[d]."
The court then sent the jurors home for the rest of the day. At the prosecutor's request, the court did not, at that time, excuse the sworn juror who had discussed the case. The clerk then reached the first alternate juror and a second speaker phone conversation occurred. In response to the court's question, he said that he had not discussed the case or formed an opinion. The court asked him to report to court the following morning.
The next day, all defense counsels asked for a mistrial and refused to consent to the seating of any discharged alternates. Initially, the prosecutor asked the court not to discharge the sworn juror who had discussed the case. The court, however, found that she was "tainted" and denied the prosecutor's request, fearing reversible error. Before dismissing the sworn juror, the court questioned her again and she denied having talked to other jurors about what was happening.
With regard to the possibility of seating an alternate, the court proposed questioning them further. Counsel for Sanford argued that "their oath has ended once you release them." Sanford's attorney cited to People v Gomez (308 AD2d 460 [2d Dept 2003], lv denied 1 NY3d 572 [2003]) and People v Brown (70 AD3d 407 [1st Dept 2010], lv denied 14 NY3d 839 [2010]), which deal with the limited scope of a court's authority to reseat a discharged alternate juror. Counsel for defendant "joined in" the arguments. He argued, among other things, "once these alternates are discharged, they are no longer jurors . . . ." Counsel for Sanford argued that substitution was not permitted under CPL 270.
In response to a series of questions, both alternates denied discussing the case, in person or via social media, visiting the scene, conducting any research or forming an opinion. They both answered "yes," when asked if they could "sit fairly here and . . . still uphold the oath that [they] originally took." They also stated that they had upheld their oath previously by not talking "about this case during the week that you were sitting here." The court seated the first alternate. The jury convicted defendant of two counts of robbery in the second degree and one count of assault in the second degree.[FN2] This appeal ensued.
Discussion
Initially, both the majority and I reject the People's argument that defendant "largely" failed to preserve his objection to Supreme Court reseating a discharged alternate juror. CPL 470.05 provides that a question of law is presented when a party makes his or [*3]her position known to the court or whenever the court expressly rules on the question being raised on appeal in response to a party's objection. Here, defendant's lawyer objected to the reseating of the excused alternate juror and moved for a mistrial. Counsel argued that the alternate juror could not be reseated after being discharged, and joined in co-counsels' objections to reseating the juror, including an argument that the provision of CPL 270.35 authorizing replacement of a sitting juror by an alternate did not apply to this situation where the two alternates had not "remained" to be used for substitution.
I disagree with the majority with respect to whether Supreme Court had the discretion to select an alternate juror, who had been discharged from service, to replace a juror who committed misconduct. When a sworn juror is found to be grossly unqualified to continue serving, the court must discharge that juror (CPL 270.35). However, the court may only put another individual on the jury and allow the trial to continue if an alternate juror is "available for service" (CPL 270.35 (1)). Moreover, if the jury "has begun its deliberations," the defendant's written consent is required before an available alternate may be allowed to join the jury (id.). Subdivision one ends by requiring the trial court to declare a mistrial, pursuant to CPL 280.10(3), if no alternate juror is available. CPL 280.10(3) mandates a mistrial "when it is physically impossible to proceed with the trial in conformity with law."
In this case, when the court discharged a sitting juror as grossly unqualified, the two alternates were no longer "available for service," and could not be substituted for the discharged juror. Pursuant to CPL. 270.30, the legislature has laid out specific procedures for the court's supervision of the jury deliberations. Under this statute, "[a]fter the jury has retired to deliberate," the court has only two permissible courses of action. With the consent of the parties, the court may "discharge the alternate jurors." Otherwise, the court must "direct the alternate jurors not to discuss the case and must further direct that they be kept separate and apart from the regular jurors" (CPL 270.30[1]).[FN3]
In this case, the court, selecting one of the two available courses of action, discharged the alternates. Consistent with that action, the court instructed the two alternates that they were not going to get into the jury room and had completed performing their duty. At this point, the alternates were specifically given permission to return to private lives, which included if they wanted, speaking with anyone, including the lawyers, about the case. Under the circumstances, there can be no doubt that the two alternates were excused.
Once the alternates were "excused," they were no longer "available alternates." This is the ruling in People v Gomez (308 AD2d at 461), where the Second Department reversed because a previously discharged alternate juror [*4]was substituted for a discharged sitting juror. Although the alternate was "available," in the sense that the court was able to arrange for the juror to come back into court, the previously discharged juror was not "available" for purposes of CPL 270.35(1).[FN4]
The majority's attempt to distinguish Gomez fails because it both mischaracterizes the facts of the case and misses the point of the holding. The majority alleges that in Gomez, the Second Department reversed a defendant's conviction because the trial court replaced a juror after deliberations had commenced without defendant's consent. However, contrary to the majority's assertions, the grant of a new trial in Gomez had nothing to do with replacing a sitting juror (number four) with an alternate juror without the defendant's consent. Instead, the Gomez court explained:
"The defendant's contention that the trial court erred in replacing juror number seven with an alternate juror without his written consent is without merit. Based on the resettled record, the jury had not yet begun to deliberate (see CPL 270.35 [1]). However, the defendant's conviction must be reversed, and a new trial ordered, because the trial court replaced juror number four after deliberations had commenced, with an alternate juror who had previously been discharged from jury service. CPL 270.35 (1) directs the court to declare a mistrial when a juror is discharged during deliberations and an alternate juror is unavailable as a replacement. Accordingly, the trial court erred in failing to declare a mistrial" (id. at 460-461).
Contrary to the majority's allegations, the holding in Gomez turned on the fact that alternate juror number four was not "available" under CPL 270.35(1), even though the juror had returned to the courthouse at the behest of the judge. In Gomez, it made no difference that deliberations had begun in the case and that the defendant consented to replace discharged juror number four. If the discharged juror had been "available" in Gomez, under CPL 270.35(1), he could have been substituted with the defendant's consent. In Gomez reversal was required because the previously discharged alternate juror, even after he returned to the courtroom, was not "available." The Court so held even though, as the majority concedes, the defense counsel had consented to the replacement. This is because CPL 270.35 (1) requires the trial court to declare a mistrial, pursuant to CPL 280.10(3), if no alternate juror is "available." CPL 280.10(3) authorizes a mistrial "when it is physically impossible to proceed with the trial in conformity with law."
In People v Brown (70 AD3d at 407), this Court was confronted with the same issue addressed in Gomez, namely whether a court could retract its discharge of an alternate juror. On appeal, relying upon Gomez, the defendant argued, among other things, that this was an error "because the alternate, having already been discharged, was unqualified to serve." This Court found that [*5]the "claim that the recently discharged alternate was unqualified is a claim that clearly requires preservation" (Brown, 70 AD3d at 408). While declining "to review this unpreserved claim in the interest of justice," this Court reviewed the claim anyway "as an alternative holding." This Court found that the claim was devoid of merit because "[t]he record reflects that the interval between the discharge of the alternate, who was still in court, and his reinstatement was de minimis." In Brown the discharged alternate juror was still in the courthouse when the trial court asked him to return. Relying upon People v Pearson (67 AD3d 600 [1st Dept 2009], lv denied 14 NY3d 804 [2010]), this Court reasoned that the trial "court has authority to make immediate retraction of discharge of jury" (Brown at 408).
The majority makes no attempt to reconcile their holding here with People v Brown. In fact, the majority concedes that the interval here, between the alternate's discharge and being asked to return was not "de minimus" under Brown, which contemplates "immediate retraction" of a discharged order. Instead, the majority argues that Brown's "de minimus" and "immediate retraction" standard should be ignored because such holding was dicta as the claim was unpreserved. Moreover, the majority argues that Brown should be ignored because the court "did not define or qualify 'de minimus.'"
Unable to persuasively distinguish Gomez and Brown, the majority then argues that neither the statute nor Brown limits the court's authority to reinstate an alternate juror after discharge. The majority's position, carried to its logical conclusion, would make the discharge of a juror meaningless, because the trial court would have the authority and discretion to reinstate an alternate juror at any time after discharge, even a juror who had returned to their personal life, as long as they are available to serve.
More importantly, the majority cites no authority directly on point to support such a bold premise that a trial court has the authority and discretion at any time to reinstate an alternate juror after discharge. Instead, the majority relies upon People v Page (72 NY2d 69, 73 [1988]), which held that a trial court must conduct a "reasonably thorough inquiry and recitation on the record of the facts" before discharging a juror. CPL 270.35(2) was added in 1996 [L 1996, ch 630)], in part to incorporate the "reasonably thorough inquiry" aspects of People v Page (72 NY2d at 73) and "to eliminate any ambiguity," which appeared to arise from Page, "as to how long a trial judge must wait for an absent juror" (People v Jeanty, 94 NY2d 507, 513, 515 [2000]). Thus, neither CPL 270.35(2) nor Page makes any pronouncement as to the mandates of CPL 270.35(1) with regard to the status of a discharged alternate juror.
To be sure, the standard for determining when to substitute an alternate juror for a sworn juror pursuant to CPL 270.35(2) is a flexible one and the decision as to [*6]whether a juror is unable to continue serving is left to the trial court's broad discretion (People v Jeanty, 94 NY2d at 513, 515). However, that does not equate to the proposition that trial courts have the discretion, let alone the authority, to reinstate an alternate juror after discharge. On the contrary, a judge's leeway or discretion when removing jurors, pursuant to CPL 270.35(2), refers to the specific circumstances or conduct that lead to disqualification, and an appellate court will ordinarily defer to the judge's decision if there is factual evidence supporting that decision (id.).
Conversely, as indicated, under New York law, "[a]fter the jury has retired to deliberate," the court has only two permissible courses of action pursuant to CPL 270.30. With the consent of the parties, the court may "discharge the alternate jurors." Otherwise, the court must "direct the alternate jurors not to discuss the case and must further direct that they be kept separate and apart from the regular jurors" (id.). Under the statute, alternate jurors cannot also continue in a limbo state where they are "discharged" but also still "available" to serve. It is not the providence of this Court to
usurp this legislative mandate by judicially reenacting the statute and ignoring controlling case law.THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: December 29, 2020



Footnotes

Footnote 1: In view of my conclusion that defendant should have been granted a new trial because the court had no authority to recall alternate jurors who had been discharged, I do not reach defendant's remaining arguments for a new trial.

Footnote 2: Codefendants Brown and Sanford were also convicted after trial.

Footnote 3: CPL 270.30 provides in pertinent part :
"After the jury has retired to deliberate, the court must either (1) with the consent of the defendant and the people, discharge the alternate jurors or (2) direct the alternate jurors not to discuss the case and must further direct that they be kept separate and apart from the regular jurors."

Footnote 4: Also, the alternate juror in Gomez, as here, had just enough time to get home when she was contacted by the court and requested to return.